**UNITED STATES of America ex rel. Beaumont GEREAU, Ishmael LaBeet, Warren Ballentine, Meral Smith and Rafael Joseph, Petitioners-Appellants,**

v.

**James D. HENDERSON, Warden, United States Penitentiary, et al., etc., Respondents-Appellees.**

**No. 74–3890.**

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1976.

William M. Kunstler, Center for Rights, J. Otis Cochran (Court-appointed), Margaret Ratner, New York City, for petitioners-appellants.

John W. Stokes, U. S. Atty., J. Robert Cooper, Asst. U. S. Atty., Atlanta, Ga., for respondents-appellees.

Before BROWN, Chief Judge, GEWIN and THORNBERRY, Circuit Judges.

John R. BROWN, Chief Judge:

Appellants Beaumont Gereau, Ishmael LaBeet, Warren Ballentine, Meral Smith and Rafael Joseph, who are presently incarcerated in various federal prisons within the continental United States, brought this habeas action pursuant to 28 U.S.C.A. §§ 2241, 2254 and 2255 seeking to be returned from the custody of the United States Bureau of Prisons to the Attorney General of the Virgin Islands, or, at least, to be incarcerated in the same prison pending exhaustion of all appeals from their convictions. The District Court denied the writ, finding no abuse of discretion on the part of the prison authorities in transferring appellants to the Bureau of Prisons from the Virgin Islands. We agree with the District Court and affirm.

### Violence In The Virgin Islands

On September 6, 1972, eight persons were killed and four persons wounded in a ruthless daylight attack on the clubhouse area of the Fountain Valley Golf Course in St. Croix, Virgin Islands. The assailants wore masks and fatigue outfits and were heavily armed, brandishing a machine gun and shotguns among other weapons. They robbed some of the guests and a clubhouse shop before making their exit. The five appellants were tried for this brutal crime and found guilty by a jury of the offenses of robbery, assault and murder, all in violation of the Virgin Islands Code (V.I.C.).[1] On the same day, August 14, 1973, they were each sentenced to eight consecutive life terms on the murder counts and con-

---

1. These offenses are defined at 14 V.I.C. § 1861 (1964) (robbery), 14 V.I.C. § 295 (1964) (assault), and 14 V.I.C. § 922 (1964) (murder).

current terms on the robbery and assault counts.

### The Scene Shifts To The Mainland

Upon being sentenced, the appellants were immediately sent to the Presidio Penitentiary in Rio Piedras, Puerto Rico. Soon thereafter they were placed in the custody of the Attorney General of the United States for service of their sentences pursuant to a contractual agreement between the Attorney General and the territorial government of the Virgin Islands, executed under authority of 18 U.S.C.A. § 5003.[2]

**2.** 18 U.S.C. § 5003, in relevant part, provides that:

"(a) The Attorney General, when the Director shall certify that proper and adequate treatment facilities and personnel are available, is hereby authorized to contract with the proper officials of a State or Territory for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or Territory: Provided, That any such contract shall provide for reimbursing the United States in full for all costs or other expenses involved.

. . . .

(c) Unless otherwise specifically provided in the contract, a person committed to the Attorney General hereunder shall be subject to all the provisions of law and regulations applicable to persons committed for violations of laws of the United States not inconsistent with the sentence imposed.

(d) The term "State" as used in this section includes any State, territory, or possession of the United States, and the Canal Zone."

The Attorney General is granted broad authority to classify federal prisoners and determine where they shall serve their sentences: 18 U.S.C.A.

§ 4081. *Classification and treatment of prisoners*

The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.

§ 4082. *Commitment to Attorney General; residential treatment centers; extension of limits of confinement; work furlough*

(a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

(b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another.

. . . .

§ 4083. *Penitentiary imprisonment; consent*

Persons convicted of offenses against the United States or by courts-martial punishable by imprisonment for more than one year may be confined in any United States penitentiary. . . .

Territorial authorization for placing Virgin Islands convicts in the custody of the United States Attorney General is given by 5 V.I.C. § 4501, which, at the time appellants were sentenced, provided that:

Persons convicted of offenses against the government of the Virgin Islands shall be committed, for such terms of imprisonment as the court may direct, to the custody of the Commissioner of Public Safety or his authorized representative, who shall designate the *places of confinement* where the sentences shall be served.

The Commissioner of Public Safety may designate *any available, suitable, and appropriate institutions.* He may order any inmate transferred from one institution to another. (emphasis added).

To dispel any doubts that this section authorized transfer of prisoners to federal authorities, the following paragraph was added to § 4501 shortly after appellants were sentenced:

The Commissioner is also authorized to use the facilities of the United States Bureau of Prisons in accordance with agreement between the Virgin Islands and the United States Department of Justice when the Commissioner determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interests of the inmate or the general welfare of the Territory.—Amended Aug. 27, 1973, No. 3469, Sess.L. 1973, p. 235.

5 V.I.C. § 4502 authorizes the Governor of the Virgin Islands to execute a reciprocal agreement with the Director of the United States Bureau of Prisons by which federal prisoners may be incarcerated in the Virgin Islands.

Upon their transfer to the United States Bureau of Prisons, appellants were sent to the Atlanta Federal Penitentiary where they were all temporarily confined. Four of the five appellants were soon permanently assigned to different prisons in the federal system.[3] At no time were the appellants or their counsel afforded prior notice, statement of reasons, or an opportunity to object to their transfer from the Virgin Islands to federal authorities or from Atlanta to separate federal prisons.

### The Momentary Habeas Confinement In Atlanta

Appellants pursued a direct appeal of their convictions to the Court of Appeals for the Third Circuit. Counsel for the appellants filed a motion in the Third Circuit requesting that they be temporarily transferred to the same federal prison to facilitate preparation of their direct appeal. By letter from the Clerk of the Third Circuit dated November 8, 1973, Chief Judge Seitz of that Circuit approved a government proposal that all the appellants be transferred back to Atlanta for three days to enable them to confer with their attorneys. Pursuant thereto, the five appellants were together at the Atlanta prison from December 31, 1973 through January 2, 1974. While all the appellants were temporarily confined in Atlanta under this plan, appellants filed their petition for habeas corpus relief. By agreement of counsel, appellants have been returned to their respective places of permanent confinement pursuant to the plan approved by Chief Judge Seitz. The Third Circuit upheld appellants' convictions on August 15, 1974. *Government of the Virgin Islands v. Gereau*, 3 Cir., 1974, 502 F.2d

914, *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).[4]

Shortly thereafter the District Court below denied habeas relief, dismissing the petition for failure to state a claim upon which relief may be granted.

Appellants seek to be discharged from federal custody and to be returned to the custody of territorial authorities of the Virgin Islands so that they may be confined at some correctional facility within the Territory. Alternatively, they seek to be confined together at a single federal institution until they have exhausted all legal challenges to their convictions.

Appellants summed up their habeas complaint in the District Court this way:

Relators, who upon sentencing, were remanded to the custody of the Attorney General of the United States Virgin Islands, were summarily transferred to the custody of respondent Bork in violation of their rights under the Fifth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendments to the Constitution of the United States. Among other things, said transfers took place without requisite due process hearings and have denied to Relators their rights to effective assistance of counsel, to due process of law and to equal protection of the law, as well as subjected them to cruel and unusual punishment. Moreover, power express[ly] reserved to the states ha[s] been usurped and exercised by the Federal Government.

In this Court, appellants have focused on only two of these contentions. First, the transfer of a territorial prisoner to a federal prison offends state sovereignty and is beyond the power of

---

**3.** Appellant LaBeet is permanently assigned to the Atlanta prison. Appellants Gereau, Ballentine, Smith and Joseph are permanently assigned to federal prisons in Terre Haute, Indiana, Marion, Illinois, Lewisberg, Pennsylvania, and Leavenworth, Kansas, respectively.

**4.** While affirming their convictions, the Third Circuit found procedural infirmities in the de-

nial of appellants' motion for new trial and ordered the Virgin Islands District Court to consider *de novo* the motion for a new trial. The subsequent denial of the motion for new trial was recently affirmed. *Government of the Virgin Islands v. Gereau*, 3 Cir., 1975, 523 F.2d 140.

Congress to authorize,[5] and, second, the summary nature of their transfers violates their right to minimal elements of due process.

## State-Federal Cooperation

■■■■ The threshold argument that 18 U.S.C.A. § 5003 usurps power expressly reserved to the states is without merit.[6] That section merely authorizes the federal government to make arrangements with a state whereby a state's prisoners may be confined in a federal institution when the state feels that either it or the prisoner may benefit from such an arrangement. The federal government is reimbursed by the state for the cost of confining the state prisoner. Federalism does not preclude cooperative action between the two sovereigns when the interests of both state and nation are thereby served. See United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938); Carmichael v. Southern Coal Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). We agree with the only other Circuit to have considered the question that § 5003 is not beyond the delegated powers of the federal government. Duncan v. Madigan, 9 Cir., 1960, 278 F.2d 695, cert. denied, 366 U.S. 919, 81 S.Ct. 1096, 6 L.Ed.2d 242, reh. denied, 366 U.S. 947, 81 S.Ct. 1675, 6 L.Ed.2d 858 (1961), cert. denied, 368 U.S. 905, 82 S.Ct. 185, 7 L.Ed.2d 99.

## Due Process and Prison Transfers

Appellants' principle contention on appeal is that they were summarily transferred, both from the Virgin Islands to the federal prison in Atlanta and from Atlanta to federal facilities throughout the United States, without any of the rudiments of due process, such as notice, a statement of reasons, and an impartial hearing, as mandated by the Due Process Clause of the Fifth and Fourteenth Amendments.[7]

## Judges Are Not Prison Administrators

Courts have traditionally been extremely hesitant to place restraints on prison authorities in matters of internal prison administration, Krist v. Smith, 5 Cir., 1971, 439 F.2d 146 (administrative segregation); O'Brien v. Blackwell, 5 Cir., 1970, 421 F.2d 844 (censorship of prisoner mail), including the administrative transfer of prison inmates. Moore v. United States Attorney General, 5 Cir., 1973, 473 F.2d 1375; Hogue v. United States, 5 Cir., 1961, 287 F.2d 99 (no right to be confined in federal prison close to home); Rodriguez-Sandoval v. United States, 1 Cir., 1969, 409 F.2d 529 (Attorney General limited only by abuse of discretion standard in sending Puerto Rican prisoner to Atlanta federal prison); Holland v. Ciccone, 8 Cir., 1967, 386 F.2d 825 (transfer of federal prisoner for medical reasons within discretion of Attorney General); Hillen v. Director of Dept. of Social Service and Housing, 9 Cir., 1972, 455 F.2d 510, cert. denied, 409 U.S. 989, 93 S.Ct. 331, 34 L.Ed.2d 256 (administrative transfer pursuant to Western Interstate Corrections Compact held to raise no federal claim); Duncan

---

**5.** Appellants' related contention, that the transfers to federal custody of Virgin Islands convicts is not authorized by Virgin Islands statute, is belied by 5 V.I.C. § 4501—assuming arguendo that non-authorization would even raise a federal claim. See note 2, supra.

**6.** In our approach we accept, as does the government, appellants' contention that even though appellants as territorial prisoners are subject to some control by the United States (including appeals to the Third Circuit, 28 U.S. C.A. § 1294), and hence some remote supervision by the United States Attorney General, they are as a practical matter analogous to prisoners of a state with respect to implementation of § 5003 and with respect to transfers to and within the federal prison system. Cf. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

**7.** We deem it unnecessary to decide which amendment applies to the Virgin Islands. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 668–69 n. 5, 94 S.Ct. 2080, 2084 n. 5, 40 L.Ed.2d 452, 460 n. 5 (1974); Fornaris v. Ridge Tool Co., 400 U.S. 41, 43–44, 91 S.Ct. 156, 157, 27 L.Ed.2d 174, 177 (1970).

*v. Madigan,* 9 Cir., 1960, *supra* (no right to hearing concerning place of custody); *Lawrence v. Willingham,* 10 Cir., 1967, 373 F.2d 731 (federal prisoner has no right to be confined near location of his state trial).

### Recent Constitutional Trends

■ This simple hands-off attitude has been complexified by recent Supreme Court cases which have held that prisoners are not stripped of their constitutional rights, including the right to due process, when the prison gate slams shut behind them. Rather, prisoners continue to enjoy the protections of the Due Process Clause subject to restrictions imposed by the practical necessities of prison life and the legitimate aims of the correctional process. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). *See also Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

In *Wolff,* for example, the Supreme Court held that a state prisoner cannot be deprived of good-time credits without at least the minimal procedural safeguards of (i) advance written notice of the charges against him, (ii) a statement of reasons and evidence relied on by the factfinder, (iii) the questioning of witnesses and presentation of documentary evidence by the prisoner at the hearing, if not inconsistent with institutional safety or correctional goals, (iv) an impartial decision maker, and (v) a limited right to a lay advocate.

### Disciplinary Transfers

■ Although we have not previously had the occasion to consider the matter of prisoner transfers in light of these recent Supreme Court guidelines, several courts have. And though they have proceeded with some uncertainty, at least one principle can be distilled from their decisions: When a prisoner is transferred without his consent for behavior he is alleged to have displayed while incarcerated, and this transfer constitutes a "serious loss" so as to involve the deprivation of a liberty or property interest, the prisoner must be accorded sufficient elements of due process to allow him to refute the facts upon which his transfer is based and to present his reasons for not being transferred before an impartial decision maker.[8]

As long as the transfer is motivated by the inmate's institutional behavior, courts recently have applied this principle in requiring due process safeguards in transfers of state inmates to federal institutions,[9] in a transfer from one federal prison to another,[10] in transfers from a state prison to a prison in another state,[11] and in intrastate transfers to more secure facilities.[12]

8. In an *emergency* situation calling for immediate action, disciplinary transfers would not necessarily need to be *preceded* by requisite procedures, as long as they were afforded to the transferee as soon as possible after the emergency transfer. *Cf. Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Morgan v. Fletcher,* 5 Cir., 1975, 518 F.2d 236.

9. *Hoitt v. Vitek,* D.N.H., 1973, 361 F.Supp. 1238, *aff'd,* 1 Cir., 1974, 502 F.2d 1158 (prison agitators transferred following prison disturbance); *Gomes v. Travisano,* 1 Cir., 1973, 490 F.2d 1209, *vacated and remanded,* 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), *aff'd and modified,* 510 F.2d 537 (politically active inmates transferred for security reasons); *Capitan v. Cupp,* D.Or., 1972, 356 F.Supp. 302 (transfer based on inmate's alleged drug traffic in prison).

10. *Robbins v. Kleindeinst,* D.D.C., 1974, 383 F.Supp. 239 (transfer to more secure facility based on alleged misconduct).

11. *Newkirk v. Butler,* 2 Cir., 1974, 499 F.2d 1214, *dismissed as moot sub nom., Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (transfer from medium to maximum security prison for alleged prison union activity); *Gaston v. Sielaff,* 7 Cir., 1975, 515 F.2d 498 (error to dismiss complaint where transfer complained of could have been punitive); *Ault v. Holmes,* W.D.Ky., 1973, 369 F.Supp. 288, *aff'd and remanded,* 6 Cir., 1974, 506 F.2d 288 (transfer of "known" agitator for security reasons).

12. *Fano v. Meachum,* 1 Cir., 1975, 520 F.2d 374, *cert. granted,* —— U.S. ——, 96 S.Ct. 444,

These courts consistently found the transfers in issue to impose a "serious loss" upon the transferred prisoner, resulting from various combinations of factors, including adverse effect on chances for parole, increased difficulty of visits from family and friends, the difficulties of adjustment to a new social environment, the temporary placement in "administrative segregation" in the receiving institution, the interruption of vocational and rehabilitation programs, increased difficulty of communicating with counsel, lost records and personal belongings, and the stigma resulting from placing the transfer on the prisoner's record. The emerging pattern is that transfers resulting from inmate prison conduct usually impose a serious loss on the transferred inmate.

### Administrative Non-Disciplinary Transfers: Striking A Balance

■ The proper balance between prisoner procedural rights and the needs of prison administration, however, has generally been struck differently in the context of non-disciplinary, administrative transfers of inmates from one institution to another, although the *Wolff* guidelines are not as clear in the case of administrative transfers. Several courts, while recognizing that the loss incident to an administrative transfer may in many respects parallel the loss resulting from a disciplinary transfer, have continued to hold that the need for procedural safeguards are simply outweighed by the administrative discretion of prison authorities. *United States ex rel. Haymes v. Montanye,* 2 Cir., 1974, *supra* (though the loss resulting from each may be equivalent, administrative transfer does

46 L.Ed.2d 384, 44 U.S.L.W. 3339 (1975) (preliminary injunction against intrastate transfer from medium to maximum security institution upheld); *United States ex rel. Haymes v. Montanye,* 2 Cir., 1974, 505 F.2d 977, *cert. granted,* 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707 (1975) (summary judgment against inmate inappropriate since transfer might have been punitive); *Aikens v. Lash,* 7 Cir., 1975, 514 F.2d 55 (disciplinary transfers from state reformatory to state prison).

not require due process safeguards required for disciplinary transfers); *Fajeriak v. McGinnis,* 9 Cir., 1974, 493 F.2d 468 (administrative transfer does not call for procedural safeguards, unless motivated by inmate's exercise of a fundamental right such as religious freedom). Others have found no serious loss resulting from a particular administrative transfer. *Shields v. Hopper,* 5 Cir., 1975, 519 F.2d 1131; *Leahy v. Estelle,* N.D. Tex., 1974, 371 F.Supp. 951, *aff'd,* 5 Cir., 1974, 503 F.2d 1401 (transfers from local to state facilities); *Floyd v. Henderson,* 5 Cir., 1972, 456 F.2d 1117 (transfer turned consecutive state and federal sentences into concurrent sentences); *Bloeth v. Montanye,* 2 Cir., 1975, 514 F.2d 1192 (protective intrastate transfer).[13]

This review of the decisions of other courts persuades us that, even though a serious disadvantage may accompany even an administrative transfer, the practical necessities of prison administration require that the *administrative* decision to transfer an inmate remain within the sound discretion of prison authorities. By "administrative" transfer we mean one that is based solely on proper administrative and correctional criteria, and *not* on an inmate's institutional behavior. In a truly administrative transfer, the reasons for transfer are extrinsic to the inmate's prison behavior, and the decision to transfer will generally not be improved at all by providing notice and a hearing to the transferee.

■ A non-disciplinary transfer is closely akin to the initial determination of the place and specific facility for confinement which, in the federal system, is

13. One pre-*Wolff* court, however, found that an administrative state to federal transfer because of inadequate facilities for women in the sending state imposed a serious loss on the inmate and called for procedural safeguards. *Park v. Thompson,* D.Haw., 1973, 356 F.Supp. 783.

almost wholly confided in the Attorney General. 18 U.S.C.A. § 4082, note 2, *supra*. The sentencing court may only recommend a place of confinement for the Attorney General's consideration. *United States v. McIntyre,* S.D.N.Y., 1967, 271 F.Supp. 991, *aff'd,* 2 Cir., 1968, 396 F.2d 859, *cert. denied,* 393 U.S. 1054, 89 S.Ct. 695, 21 L.Ed.2d 697 (1969); *Bauers v. Heisel,* 4 Cir., 1966, 361 F.2d 581. With all of the complexities of penology, sociology and criminology, much of which is in a state of undulating flux even for those expert in the field, courts and judges are not equipped to decide such matters. Obviously, no due process hearing is called for in selecting the institution of confinement by those charged with operational responsibility.

*Transfers Non-Disciplinary*

■ Applying these principles to the appellants in this case, it is evident that their transfer was not disciplinary in nature, since it was not based on their institutional behavior. The decision to transfer appellants from territorial to federal custody and from the federal prison in Atlanta to various federal facilities throughout the United States was administrative, and appellants do not contend otherwise, Indeed, they hardly remained long enough in St. Croix, Rio Piedras or Atlanta to display any institutional behavior on which their transfers otherwise might have been based. Their short, temporary stays at these institutions also point out the fact that the "transfers" of which they complain were closely related to the initial process of diagnosis, classification and designation of appropriate institution which many correctional systems favor in the initial placement of defendants sentenced to their custody. As discussed above, this relationship to the initial placement process would call for even more administrative leeway to be given to appellants' transfers if more were needed.

We hold that appellants were not entitled to notice, a hearing, or other elements of procedural due process in connection with their administrative transfers at issue in this case.

*Non-Disciplinary Transfers Adequately Protected*

■ There is ample protection in the rule committing these decisions to administrative discretion, since the abuse of discretion standard is not a meaningless phrase allowing courts to close their eyes altogether to the transfer decisions of prison administrators, whether the transferee be sent from state to federal custody or from one institution to another. As pointed out, the Attorney General must confine inmates in his custody in an "available, suitable, and appropriate institution or facility." 18 U.S.C.A. § 4082(b). Although the door is narrow and the way hard, governmental action which is in fact arbitrary or capricious is open to limited, but ample, judicial scrutiny.

■ The appellants before us, however, do not allege that theirs was a punitive transfer cloaked in administrative wraps or that it amounted to an abuse of discretion by prison authorities. Furthermore, the decision to treat them as maximum security risks and to confine them in separate facilities outside the Virgin Islands was eminently reasonable in light of the nature of their offense, their attempts to escape and their threatening remarks during their trial, the inadequate correctional facilities in the Virgin Islands, and the security and correctional rationale behind their separation. In addition, the inconvenience caused by their transfer and separation in preparing for their appeal to the Third Circuit was mitigated by allowing them to come together in Atlanta to meet with counsel, a procedure approved by Chief Judge Seitz of the Third Circuit.

As the District Court found, the decision to place appellants in federal custody and to confine them in separate federal institutions was not arbitrary or capricious but rather a proper exercise of discretion by prison authorities.

Affirmed.