Elbert BLANGO, Petitioner–Appellant,

v.

Richard R. THORNBURGH; J. Michael Quinlan; Gary L. Henman; Mayor, Washington, D.C., Respondents–Appellees.

No. 91–3047.

United States Court of Appeals, Tenth Circuit.

Aug. 16, 1991.

Elbert Blango, pro se.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

PER CURIAM.

■ Petitioner Elbert Blango was convicted of criminal violation of the District of Columbia Code and was sentenced by the District of Columbia Superior Court to the custody of the United States Attorney General. Pursuant to a memorandum of understanding between the federal Bureau of Prisons and the District of Columbia Department of Corrections, petitioner was transferred to the United States Penitentiary, Leavenworth, Kansas (USPL), to serve his sentence. He petitioned the United States District Court for the District of Kansas for habeas corpus relief pursuant to 28 U.S.C. § 2241. It was his position that his transfer violated the "compact clause" of the United States Constitution, art. I, § 10, cl. 3 ("No State shall, without the Consent of Congress, ... enter into any Agreement or Compact with another State...."). The district court denied his petition for habeas corpus, *Blango v.*

*Thornburgh,* No. 90–3516–R, 1991 WL 17724 (D.Kan. Jan. 25, 1991), Dist.Ct.R. doc. 13 (order denying petition for habeas corpus, referred to in this opinion as the Jan. 25, 1991, Order).[1] Petitioner appeals pursuant to 28 U.S.C. 2253.[2] We affirm.

Petitioner's habeas corpus claim to the district court was constructed through several interrelated arguments concerning the constitutionality of various statutes as applied to his transfer into federal custody. Summarizing his arguments, first, he noted he was transferred pursuant to a memorandum of understanding between the director of the federal Bureau of Prisons, under the authority of 18 U.S.C. § 5003 (statutory authority for director of Bureau of Prisons to contract with states to house state prisoners in federal prison facilities),[3] and the director of the District of Columbia Department of Corrections, under the authority of D.C.Code Ann. § 24–425 (ordinance authorizing the Attorney General to place offenders sentenced by the District of Columbia courts in the most suitable District of Columbia or federal prison facility).[4] Un-

1. Petitioner submitted a notice of appeal, which the district court treated as an application for certificate of probable cause. *Blango v. Thornburgh,* No. 90–3516–R (D.Kan. Feb. 7, 1991), Dist.Ct.R. tab 16 (order declining to issue a certificate of probable cause). The certificate of probable cause is a procedural prerequisite for appeal of an order denying a petition for habeas corpus brought "where the detention complained of arises out of process issued by a state court." 28 U.S.C. § 2253. Whether prisoners sentenced by the District of Columbia Superior Court after passage of the District of Columbia Court Reform and Judicial Procedure Act of 1970, 84 Stat. 473, should be treated as prisoners under sentence of state court is still an open question. *See Pernell v. Southall Realty,* 416 U.S. 363, 367–68 & n. 4, 94 S.Ct. 1723, 1725–26 & n. 4, 40 L.Ed.2d 198 (1974). However, because the resolution of petitioner's appeal does not hinge on the resolution of this important question, we express no view on the matter. In either case, the district court's refusal to issue a certificate of probable cause was not error. If the District of Columbia is treated as a state for the purposes of this statute, treating the notice of appeal as an application for certificate of probable cause was clearly correct, as was its denial. If the District of Columbia is not treated as a state under the statute, the district court was still within its sound discretion when it treated the notice of appeal as an application for

certificate of probable cause. *See* 28 U.S.C. § 2253; Rule 1(b), Rules Governing Section 2254 Proceedings in the United States District Court ("In applications for habeas corpus in cases not [involving custody pursuant to a judgment of a state court], these rules may be applied at the discretion of the United States district court.")

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument. Petitioner's motion to proceed in forma pauperis is hereby granted.

3. 18 U.S.C. § 5003(a)(1) provides:

   The Director of the Bureau of Prisons when proper and adequate facilities and personnel are available may contract with proper officials of a State or territory, for the custody, care, subsistence, education, treatment, and training of persons convicted of criminal offenses in the courts of such State or territory.

4. District of Columbia Code Annotated § 24–425 provides:

   All prisoners convicted in the District of Columbia for any offense, including viola-

der petitioner's analysis, the provisions of these two statutes produce a conflict so severe it violates the compact clause of the Constitution "when applied to the states." Building on this theme, petitioner claimed that because his transfer under section 5003 was allegedly unconstitutional, it violated 18 U.S.C. § 4001(a) ("No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress."), and thus his incarceration at USPL constituted false imprisonment. And, as the final claim in his petition for release from prison, he argued that the District of Columbia lost jurisdiction over him when it transferred him and that such "unconditional, voluntary" loss of jurisdiction constituted an implied pardon or commutation of his sentence. Under this combination of claims, summarized as an alleged unconstitutional basis for his transfer to the federal penitentiary coupled with an alleged implied pardon upon transfer, petitioner applied for his immediate release from the federal penitentiary.

The district court held that petitioner was transferred pursuant to 18 U.S.C. § 5003 and that the compact clause did not address agreements between the states and the federal government. Jan. 25, 1991, Order at 4.[5] The court further held that Congress was within its power when it authorized such state-federal contracts under section 5003. *Id.* The court found that the "Memorandum and Understanding" between the director of the federal Bureau of Prisons and the director of the District of Columbia Department of Corrections satisfied the requirements of section 5003. *Id.* at 3–4. The court concluded that because there was lawful authority for the District of Columbia to contract for federal prison custody of petitioner, there was no basis for a claim of false imprisonment under 18 U.S.C. § 4001. *Id.* at 4. The court rejected petitioner's claim that the District of Columbia lost jurisdiction upon its transfer of petitioner to the federal penitentiary, noting that the case upon which petitioner relied was one involving extradition, not a transfer under inter-governmental agreement. *Id.* at 5; *see also Miller v. Thornburgh,* 755 F.Supp. 980 (D.Kan.1991) (same holding under same facts and same claims).

In his appeal to this court, petitioner makes three claims. First, he claims the district court failed to address issues relevant to his habeas corpus petition "in the context raised by petitioner." Second, he claims the district court failed to address his argument that his transfer was unconstitutional. And third, he claims the district court manifested an attitude of partiality in favor of the government, depriving him of a fair hearing. Petitioner's first two issues are closely related, and we consider them together.

The cornerstone of petitioner's argument is his allegation that 18 U.S.C. § 5003 contravenes the congressional intent expressed in the legislative history of 4 U.S.C. § 112.[6] Section 112 authorizes in-

---

tions of municipal regulations and ordinances and acts of Congress in the nature of municipal regulations and ordinances, shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful condi-

tions in the institution where such prisoner is confined, or for other reasons.

**5.** As a preliminary matter, the district court held that petitioner could proceed with this habeas corpus action without first exhausting internal prison administrative remedies. The court held that because petitioner's habeas corpus application was based on a challenge to the underlying constitutional validity of his incarceration rather than control and management of the prison "[r]elief through the federal prison administrative grievance procedure would be so unlikely that to require such exhaustion would serve only as an obstructive formality." Jan. 25, 1991, Order at 3.

**6.** 4 U.S.C. § 112 provides:
(a) The consent of Congress is hereby given to any two or more States to enter into agree-

terstate cooperation in the enforcement of the states' respective criminal statutes. Petitioner quotes the following portion of the legislative history of section 112:

"The rapidity with which persons may move from one State to another, those charged with crime and those who are necessary witnesses in criminal proceedings, and the fact that there are no barriers between the States obstructing this movement, *makes it necessary that one of two things be done, either that the criminal jurisdiction of the Federal Government shall be greatly extended or that the States by mutual agreement shall aid each other in the detection and punishment of offenders against their respective criminal laws.*" S Rep No. 1007, 73rd Congress, 2d Sess, 1 (1934); HR Rep No. 1137, 73rd Congress, 2nd Sess, 1–2 (1934).

Dist.Ct.R. doc. 12 at 11 (traverse) (emphasis and punctuation as supplied by petitioner). Petitioner submits that section 5003 contradicts this expressed intent by significantly extending the criminal jurisdiction of the federal government. In addition, petitioner argues that section 112 alone does not provide authority for his transfer because while it approves cooperation between the states, it does not contemplate federal-state transfers.

Just as section 112 authorizes interstate prisoner transfer, 18 U.S.C. § 5003 authorizes federal-state prisoner transfer. The legislative history of section 5003 was considered by the Supreme Court in *Howe v. Smith,* 452 U.S. 473, 483–86, 101 S.Ct. 2468, 2475–77, 69 L.Ed.2d 171 (1981), in which the Court concluded:

In the absence of any evidence of congressional objection the [federal Bureau of Prisons'] interpretation [that section 5003 authorizes federal-state prisoner transfer] must be given great weight.

The plain language, the legislative history, and the long-standing administrative interpretation of § 5003(a) clearly demonstrate that the provision is a broad charter authorizing the transfer of state prisoners to federal custody.

*Id.* at 486–87, 101 S.Ct. at 2476–77; *see also United States ex rel. Gereau v. Henderson,* 526 F.2d 889, 894 (5th Cir.1976) ("§ 5003 is not beyond the delegated powers of the federal government"). However, petitioner argues that contrary to *Howe,* there was "evidence of congressional objection" in the legislative history of 4 U.S.C. § 112.[7] Because section 112 is the statutory authority required by the Constitution's compact clause for interstate transfer of prisoners, petitioner asserts that if section 5003 violates the intent of Congress in fashioning section 112, it also violates the compact clause, rendering unconstitutional his transfer by the District of Columbia.

However, petitioner's argument must fail, for while the compact clause prohibits agreements between the states, it does not prohibit agreements between the federal government and the states. *See, e.g., Gereau,* 526 F.2d at 894 (approving mutually beneficial cooperative action between federal government and state). In addition, housing state offenders is not, as petitioner characterizes it, an expansion of federal criminal jurisdiction. Criminal jurisdiction over a state's inhabitants remains with the respective states and territories under whose jurisdiction the prisoners were originally sentenced. Section 5003 is limited to the grant of permission for the feder-

---

ments or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts.

(b) For the purpose of this section, the term "States" means the several States and Alaska, Hawaii, the Commonwealth of Puerto Rico, the Virgin Islands, Guam and the District of Columbia.

**7.** Although petitioner cites *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), in support of his theory, *Cuyler* deals with interstate transfer of prisoners in the context of the Interstate Agreement on Detainers and the Uniform Criminal Extradition Act and is not applicable to petitioner's circumstance. Petitioner was not extradited nor was he transferred after a detainer was filed; his was a mid-sentence transfer for completion of his incarceration in a federal penitentiary.

al government and the states to enter into federal-state agreements for the efficient housing of offenders after their conviction under the jurisdiction of state criminal law.

Petitioner attempts to distinguish between the propriety of the federal government's acceptance of his transfer from the District of Columbia and the propriety of the District of Columbia's transfer of him to a federal prison. It is clear that section 5003 empowers the federal Bureau of Prisons to accept petitioner. It is equally clear that the *Howe* Court's interpretation of section 5003 as a broad grant of approval for federal-state prisoner transfer does not run afoul of the Congressional intent to avoid expansion of federal criminal jurisdiction, as expressed in the legislative history of 4 U.S.C. § 112(a). As to the propriety of his transfer by the District of Columbia out of the District's correctional system to USPL, D.C.Code § 24–425 explicitly permits the Attorney General of the United States, in whose custody violators of the District of Columbia Code are placed, to house these prisoners in federal institutions or in institutions maintained by the District of Columbia, at his discretion.[8] Thus, both considered as a transfer *from* the District of Columbia and as a transfer *to* USPL, petitioner's transfer was statutorily and constitutionally valid.

■ Petitioner claims the District of Columbia waived jurisdiction over petitioner when it surrendered him to another sovereign in violation of the due process clause of the Fourteenth Amendment, citing *Piper v. Estelle*, 485 F.2d 245 (5th Cir.1973). However, *Piper* does not support this proposition. In *Piper*, the Fifth Circuit held that a sovereign effectively waived jurisdiction only when its action was "so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with 'fundamental principles of liberty and justice'" for that sovereign to retain jurisdiction. *Id.* at 246 (citation omitted). There is no merit in petitioner's argument that his transfer satisfies *Piper*'s criteria.

Finally, petitioner claims the district court was partial to the government during its review of the case. We find petitioner's suggestion of district court partiality to be completely without foundation.

First, he cites several examples of purported partiality related to the broader issue of the district court's determination of the proper respondent to this action.[9] As one of the respondents of his habeas corpus petition, petitioner named the warden of the USPL. In addition, he named the Attorney General of the United States and the director of the federal Bureau of Prisons. Petitioner claimed that because the federal Bureau of Prisons drafted section 5003 and steered it through Congress, *see Howe*, 452 U.S. at 485, 101 S.Ct. at 2476, and because its director and the director's supervisor, the Attorney General of the United States, are jointly responsible for the administration of its provisions, *id.*, they were proper respondents to this action. And finally, he named the mayor of Washington, D.C., claiming that because he viewed his transfer as an implied pardon and because the mayor of the District of Columbia is the official empowered to grant pardons of criminal sentences from the District of Columbia Superior Court, the mayor was a proper respondent.

The district court found: "[T]he proper respondent for petitioner's habeas action is Gary Henman, warden at USPL, because he is petitioner's present custodian. The court finds it appropriate to dismiss from this action all named respondents other

---

8. Contrary to petitioner's assertion, *United States v. District of Columbia*, 703 F.Supp. 982 (D.D.C.1988), *aff'd as modified by* 897 F.2d 1152 (D.C.Cir.1990) (District of Columbia Department of Corrections may not *refuse* to accept prisoners who have been sentenced by the District of Columbia Superior Court so long as prison population limits are not exceeded), is not contrary to this conclusion.

9. Petitioner claims that as a result of the failure of the "state respondents" to respond to the district court's show cause order, these respondents presented no opposition to his claims and therefore his allegations as to those respondents must be deemed admitted. He buttresses this argument by claiming that the "federal respondent" had no standing to address his claims against the state respondents.

than respondent Henman." Jan. 25, 1991, Order at 3 (citations omitted). The district court was correct; petitioner's arguments were without merit. *See* 28 U.S.C. § 2242 (provides in pertinent part that "application for a writ of habeas corpus shall ... allege ... the name of the person who has custody over [the petitioner] and by virtue of what claim or authority...."); *Guerra v. Meese,* 786 F.2d 414, 416 (D.C.Cir.1986) (attorney general not an appropriate respondent in habeas petition); *cf. Ashley v. State of Washington,* 394 F.2d 125, 126 (9th Cir. 1968) (the state under the authority of which the petitioner is in custody is not an appropriate respondent in habeas petition).[10] Because the United States Attorney General, the director of the federal Bureau of Prisons, and the mayor of Washington, D.C., were properly dismissed from the action, their lack of response to the district court's show cause order was of no consequence.

Second, petitioner claims the district court showed partiality because every motion of the government was granted, "over 90%" of petitioner's motions were allegedly ignored, and all of petitioner's motions which were considered were denied. These arguments are unavailing. It is not favoritism for the district court to rule in favor of one party if that party's position is correct as a matter of law. And, after review of the record, it is clear that, while some of the court's rulings necessarily resolved claims not explicitly and separately addressed by the court, none of petitioner's motions were ignored. For example, the court's conclusion that the warden of USPL was the only proper respondent and that all other named respondents should be dismissed rendered moot petitioner's request

that all claims as to those other respondents be deemed admitted because they did not file answers to the habeas corpus petition. The court responded to the substance of each claim put forth by petitioner.

As a third example of the court's purported favoritism, petitioner notes that he submitted a motion to the district court for "injunctive relief to preserve the status quo of his confinement conditions pending a final determination of his rights in the matter." In response, the district court found "that a temporary restraining order or preliminary injunction is not appropriate at this time." Dist.Ct.R. doc. 7 (order to show cause). Petitioner complains that this adverse "sua sponte" ruling denying petitioner's initial motion for injunctive relief violated 28 U.S.C. § 1292(a)(1)[sic].[11]

■ To determine whether denial of petitioner's motion for injunctive relief was an indication of partiality, we have reviewed that denial as if petitioner had appealed the substance of the denial. This court reviews a district court order denying preliminary injunction for legal error or abuse of discretion. *See Tri–State Generation & Transmission Ass'n v. Shoshone River Power, Inc.,* 805 F.2d 351, 354–55 (10th Cir.1986), *appeal after remand,* 874 F.2d 1346, 1354 (10th Cir.1989). The moving party bears the burden of proving:

(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*United States ex rel. Goodman v. Roberts,* 152 F.2d 841, 842 (2d Cir.) ("A writ of habeas corpus must be directed to some person who has the power to produce before the court the body of the party detained."), *cert. denied,* 328 U.S. 873, 66 S.Ct. 1377, 90 L.Ed. 1642 (1946).

---

**10.** The rationale for naming as respondent the person actually holding the petitioner in custody is undisputed. *See, e.g., Reimnitz v. State's Attorney,* 761 F.2d 405, 408 (7th Cir.1985) (custodian is proper respondent "since habeas corpus challenges the lawfulness of the petitioner's custody, ... [the proper respondent] shall be the person who has that custody"); *Dunbar v. Cranor,* 202 F.2d 949, 950 (9th Cir.1953) ("The person having the physical custody of the prisoner, who is capable of bringing him into court, is the only person who may properly be named respondent in a petition for habeas corpus.");

**11.** Inasmuch as 28 U.S.C. § 1292(a)(1) provides for appellate review of interlocutory decisions, it is clearly not the statutory basis for a claim of erroneous denial of injunctive relief.

*Id.* at 355. After review of the record on appeal, we conclude the district court did not abuse its discretion when it denied petitioner's request for injunctive relief. Petitioner's arguments to the district court in support of his request were merely conclusory reiterations of the requirements for an injunction couched in the form of declarative statements. Dist.Ct.R. doc. 4. The district court did not show partiality to the government by correctly, if summarily, denying petitioner's motion for injunctive relief.

■ Fourth, petitioner claims that because the copy of the memorandum of understanding between the federal Bureau of Prisons and the District of Columbia Board of Corrections submitted by the government as an attachment to its answer and return was not authenticated pursuant to Fed.R.Civ.P. 44(a)(1) (proper authentication of official records to be used as evidence at trial), it should have been deemed stricken from the record, and the district court's failure to do so was evidence of partiality.

We are guided by Rule 7(d) of the Rules Governing Section 2254 Cases in the United States District Courts, which provides: "The court *may* require the authentication of any material under subdivision (b) and (c) [examples of materials the court may request to expand the record under consideration with the petition for the writ]." (emphasis added). We deem the contract in question to be part of an expansion of the trial court record, albeit proffered by the respondent rather than directed by the court. As such, authentication of the exhibit would be discretionary under Rule 7(d), and we deem that analysis to extend to petitioner's situation here. *See* Advisory Committee Note to Rule 7(d) ("Under subdivision (d) the judge can require authentication *if he believes it desirable to do so.*" (emphasis added)). In addition, 28 U.S.C. § 2248 provides: "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." While peti-

tioner's traverse raised the issue of whether the document had been authenticated under the Federal Rules of Evidence, it did not challenge the truth of the government's allegation that the document attached to its answer was an accurate copy of the memorandum of understanding between the Department of Corrections for the District of Columbia and the federal Bureau of Prisons which satisfied the requirements of section 5003.

Thus, petitioner has not come forward, either in his traverse to the government's return in the district court or in his brief on appeal, with any indication that the document attached to the answer and return was not a reliable copy of the memorandum of understanding between the federal Bureau of Prisons and the District of Columbia Department of Corrections or that there was any other impediment to the district court's conclusion that the memorandum of understanding was sufficient to satisfy section 5003. The district court's conclusion was not an abuse of its discretion. The memorandum of understanding properly may be deemed a "contract" for purposes of section 5003, and the copy attached to the government's return was sufficiently reliable to form the basis of the district court's determination.

■ Finally, petitioner claims that the court ruled on petitioner's traverse to the return in excess of the five days allowed by 28 U.S.C. § 2243 ¶ 4. A closer look at the statute upon which petitioner relies reveals that his claim is without foundation.

28 U.S.C. § 2243 requires a hearing on a show cause order issued pursuant to a petition for writ of habeas corpus within five days after the return is filed unless additional time is allowed for good cause, and it then requires that the court "summarily hear and determine the facts, and dispose of the matter as law and justice require."

*Johnson v. Rogers,* 917 F.2d 1283, 1284 (10th Cir.1990). However, when determining whether delay beyond the five-day period is permissible, "each situation must be considered on its own facts." *Id.* at 1285.

In the present case, the government's answer and return was filed January 10, 1991, Dist.Ct.R. doc. 11; petitioner's traverse was filed January 22, 1991, *id.* doc. 12; and the district court's order denying the petition was filed January 25, 1991. *Id.* doc. 13. This computes to a fifteen-day delay before the court's order was filed, three days after the filing of petitioner's traverse. Under the circumstances of this case, we hold that this brief delay did not constitute an abridgment of petitioner's right to speedy resolution of his habeas corpus petition.

In conclusion, the district court's denial of petitioner's application for writ of habeas corpus is AFFIRMED.