Anthony Chukwuma **EMEJULU**,
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 92–5162.

United States Court of Appeals,
Fifth Circuit.

April 15, 1993.

Anthony Chukwuma Emejulu, Oakdale, LA, pro se.

William Barr, Atty. Gen., Robert L. Bombough, Anthony W. Norwood, Robert Kendall, Jr., U.S. Dept. of Justice, Washington, DC, John B.Z. Caplinger, DD, INS, New Orleans, LA, for respondent.

Before KING, DAVIS, and WIENER, Circuit Judges.

BY THE COURT:

IT IS ORDERED that petitioner's request for habeas corpus be and is hereby transferred to the United States District Court for the Western District of Louisiana, pursuant to Fed.R.App.P. 22(a).

Petitioner Anthony Chukwuma Emejulu, a citizen and native of Nigeria, is a permanent resident alien who was ordered deported by the INS in February 1992. He was found deportable under 8 U.S.C. § 1251(a)(2)(A)(ii) for convictions of crimes involving moral turpitude—specifically, he was convicted of mail fraud under 18 U.S.C. § 1342—and is now detained at the Federal Detention Center in Oakdale, Louisiana, awaiting deportation.

■ Emejulu styles his claim to this court as a petition for a writ of habeas corpus ad subjuciendum. He first asserts that the $20,000 bond set by the Immigration Judge is "exorbitant" and that, even though Petitioner did not appeal that determination to the Board of Immigration Appeals, we should grant him relief by reducing his bond on habeas review. As the government points out in its response, however, we are without jurisdiction to address this issue. *See Young v. United States Dep't of Justice, INS,* 759 F.2d 450, 457 (5th Cir.1985).

■ More importantly, Emejulu asserts that we should consider the substance of his habeas petition as a matter of original jurisdiction. He notes that 28 U.S.C. § 2241(a) authorizes *any* judge of this circuit to grant him habeas relief even though he has not initiated his habeas petition in a federal district court. Citing the histories of several other similarly situated detainees' petitions for habeas relief, which purportedly have been long pending in the Western District of Louisiana, Emejulu argues that filing a petition in that district court does not offer him a realistic possibil-

ity of relief, given the delay he is sure to experience in light of those experienced by his comrades.[1]

We are satisfied that the inundated district and magistrate judges of the Western District of Louisiana are toiling long and hard to process the torrent of habeas petitions flowing from the Oakdale facility as a result of the lengthy delays in processing the detainees for deportation. Although we sympathize with Emejulu (and his fellow detainees in that facility), we cannot allow him to play judicial leapfrog, bypassing the district court and turning our court into a factfinding body, simply because the administrative delays in processing deportations produces an atypical and unanticipated volume of habeas petitions that is beyond the capability of the district court to process in a timely fashion.

1. We recognize that the Attorney General has broad discretion in processing the deportations of aliens, but we are at a loss to understand the delays concerning the detainees at Oakdale. As we recognized recently in our opinion in *Giddings v. Chandler,* 979 F.2d 1104 (5th Cir.1992) (concerning a prisoner trying to force the INS to deport him while he was still serving his time in prison), "the principal thrust of [much of the legislation in this area] was to alleviate the serious problems of prison overcrowding and government expenditures. Specifically, the congressional debates targeted and criticized the INS practice of waiting until a convicted alien had served his sentence before commencing deportation proceedings." *Id.* at 1106 (footnotes omitted) (citing the legislative history of 8 U.S.C. § 1252(i)). In the instant case (and in the cases of many of the detainees at Oakdale), the alien was (1) convicted of the kind of crime that made him deportable, (2) nevertheless served his entire prison sentence, (3) was then shipped to the federal holding center at Oak-

dale, (4) had a deportability hearing in which he was found deportable, and (5) languishes in Oakdale awaiting deportation. It appears to us that such lengthy delays have caused considerable expenditures of the very tax dollars that Congress was concerned about when it passed much of the subject legislation (not to mention the de facto extension of prison time beyond that for which such detainees have been sentenced). Compounding the expenditures that Congress was concerned with is the expense being borne by the Western District of Louisiana in processing the flood of habeas petitions being filed by the detainees who, by any fair reading of the statute, should long since have been deported. Although we have no desire to administer the deportation of aliens (or to hear again the stereotypical response blaming budget constraints and personnel shortages), we believe that the INS should take immediate steps to expedite the process and clean out the deportation backlog, or explain satisfactorily why it has not or cannot.