Mustapha EL KOUNI, Plaintiff

v.

**TRUSTEES OF BOSTON UNIVERSITY,**
Defendant.

No. CIV. A. 99–11174–EFH.

United States District Court,
D. Massachusetts.

Oct. 17, 2001.

2

2

Robert D. Cohan, Cohan, Rasnick, Myerson & Marcus, LLP, Boston, MA, for Plaintiff.

Robert B. Smith, Office of General Counsel, Boston, MA, for Defendant.

### *FINDINGS AND ORDER*

HARRINGTON, Senior District Judge.

After a nine-day trial, in which the jury found against the Plaintiff Mustapha el Kouni on his claim for damages, this Court now considers plaintiff's request for an injunction to expunge his academic record so as to make him eligible for reinstatement as a student in the MD/PhD program at Boston University School of Medicine, from which he had been dismissed. The plaintiff brought this case for disability discrimination under Title III of the Americans with Disabilities Act (42 U.S.C. § 12181 (1994)) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a) (Supp. V 1999)). Because this Court finds that the plaintiff was not an "otherwise qualified" person within the terms of the Acts, the requested injunction is denied.

To establish a claim of disability discrimination under both the Americans with Disabilities Act and the Rehabilitation Act, a plaintiff must prove three elements by a preponderance of the evidence. Firstly, he must prove that he was disabled. *Katz v. City Metal Co.*, 87 F.3d 26, 30 (1st Cir.1996). Secondly, he must prove

that he was "otherwise qualified," meaning that, with or without reasonable accommodation, he was able to perform the essential functions of the position, namely, in this case, that he was able to successfully complete all of the program's requirements. *Id.* Thirdly, he must prove that he was dismissed from the program because of his disability, that is, that but for his disability he would have been allowed to continue in the MD/PhD program.[1] *Id.* A plaintiff can make a threshold showing on this third element by offering indirect evidence of discrimination. *Id.* at 30 n. 4, citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). However, once the defendant has articulated a non-discriminatory justification for dismissing the plaintiff from the program, then the plaintiff must prove that the defendant's proffered justification is a mere pretext concealing its true discriminatory motive, namely, one motivated by plaintiff's disability and not by his lack of aptitude as a student. *Id.; Wynne v. Tufts University School of Medicine ("Wynne II"),* 976 F.2d 791, 796 (1st Cir. 1992).

With respect to the first element of the discrimination claim, this Court finds that the plaintiff was disabled, namely, mentally impaired, within the meaning of the Acts. The facts show that Mustapha el Kouni was diagnosed with clinical anxiety in December of 1993 and with concurrent depression in April of 1994. He was further diagnosed with bipolar disorder on July 25, 1997. El Kouni's mental condition qualifies as a mental impairment that substantially limits a major life activity, since the condition slowed down his thought processing and resulted in cognitive blunting. The facts indicate that it was not until December 11, 1997, however, that el Kouni first notified Boston University that he suffered from bipolar disorder and made a request for an accommodation,[2] which the University promptly granted by way of providing him with extra time in which to complete his written exams.

With respect to the second element of the discrimination claim, a person is considered to be "otherwise qualified" under the Acts if he is able to perform the essential functions of the position, either with or without the help of a reasonable accommodation, namely, to successfully complete all of the program's requirements. 29 C.F.R. § 1630.2(m) (1999) (EEOC regulations interpreting the ADA); 45 C.F.R. § 84.3(k) (1999) (HEW regulations interpreting the Rehabilitation Act); *Ward v. Massachusetts Health Research Institute,* 209 F.3d 29, 33 (1st Cir.2000).

---

1. In spite of the fact that the Rehabilitation Act requires a showing that the plaintiff's disability was the sole reason for the defendant's adverse action, both parties in this case have agreed to be bound by the lesser "because of" or "but for" standard traditionally used under the Americans with Disabilities Act. *Compare* 29 U.S.C. § 794(a) ("solely by reason of his or her disability"), *with* 42 U.S.C. § 12182 ("on the basis of disability"). Although recent amendments to the Rehabilitation Act appear to suggest that the ADA standard should now apply to the Rehabilitation Act as well, the Court of Appeals for the First Circuit has specifically left this question undecided in this circuit. *Leary v. Dalton,* 58 F.3d 748, 752 (1st Cir.1995) ("We therefore regard the applicability of Section 504 [of the Rehabilitation Act] and its sole causation test in this federal employment suit as an open question, but one which we need not reach here."); *but see Lesley v. Hee Man Chie,* 250 F.3d 47, 53–54 (1st Cir.2001) (using the sole causation test to affirm a grant of summary judgment under the Rehabilitation Act).

2. This request was first made more than three years after plaintiff had been dismissed from the MD portion of the MD/PhD program under the condition that he could reapply for reinstatement in the MD portion upon the successful completion of the PhD portion of the program.

4

In making this determination, the law is not required to disregard the plaintiff's disability. Rather, the very limitations inherent in a disability are valid considerations in this context, since "an otherwise qualified person is one who is able to meet all of a program's requirements *in spite* of his handicap." *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 154 (1st Cir. 1998), quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

■ In determining whether or not an individual is "otherwise qualified," the law also takes into consideration the availability of any reasonable accommodation that would have enabled him to perform the essential functions of the program. 29 C.F.R. § 1630.2(m); 45 C.F.R. § 84.3(k). If a plaintiff can show the existence of a reasonable accommodation that, if granted by the defendant, would have enabled him to meet all of the position's requirements, then he is "otherwise qualified." *Ward*, 209 F.3d at 36. However, the burden rests on the plaintiff to show the availability of any such reasonable accommodation. *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 27 (1st Cir.2001). Furthermore, an accommodation in this context cannot be considered reasonable if it would substantially change the fundamental nature of the program at issue. *Southeastern Community College*, 442 U.S. at 410, 99 S.Ct. 2361.

■ Finally, in considering whether someone is "otherwise qualified" to participate in a post-secondary academic program, a certain degree of deference is owed to the judgement of an academic institution. *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). A university is entitled wide discretion in making judgments as to the academic performance of its students, so long as its behavior is not so arbitrary or irrational as to not constitute an exercise of professional judgment. *Wynne v. Tufts University School of Medicine ("Wynne I")*, 932 F.2d 19, 25–26 (1st Cir.1991); *Doe v. New York University*, 666 F.2d 761, 776 (2d Cir.1981).

■ Here, the facts show that el Kouni was dismissed from the MD portion of the MD/PhD program in 1994 because he had received a failing grade in Gross Anatomy, another failing grade in Neuroscience, and an unsatisfactory grade in a third course. The school also found him unfit to remain in the MD curriculum because of his persistent offensive and disrupting behavior during the course lectures. He was subsequently dismissed from the PhD portion of that program in 2000 because of the generally poor quality of his research and because he had failed to make sufficient progress in his laboratory experiments, which were necessary to the completion of his thesis—a basic program requirement. There was no causal relationship between the lack of progress in the quality of plaintiff's laboratory experiments and his mental disability. Nor did he make any request for an accommodation regarding his laboratory experiments. It was not lack of time which caused his academic failure but rather his lack of scientific aptitude.

This Court finds, along with the jury in this case, that Mustapha el Kouni was not "otherwise qualified" to remain in the MD/PhD program at Boston University School of Medicine from which he was dismissed. El Kouni has failed to prove that he was able to perform the essential functions of the MD/PhD program, either with or without the help of reasonable accommodation. *See Ward*, 209 F.3d at 33. It is clear from the facts that he was not capable of satisfying all of the academic standards requisite to participation in and completion of the MD/PhD program. Furthermore, he

has failed to direct this Court's attention to the existence of any reasonable accommodation that would have enabled him to satisfy the program's requirements. Thus, el Kouni is not "otherwise qualified" to remain as a student in the MD/PhD program. Plaintiff's request for injunctive relief is therefore denied.[3]

SO ORDERED.

---

**3.** Although not necessary to the decision, the Court also finds that el Kouni has failed to prove that he was dismissed as a student from the MD/PhD program because of his disability. There is simply no evidence, either direct or indirect, that it was the plaintiff's disability, as opposed to his poor academic performance and independent misbehavior, that caused him to have been dismissed from the program. *See Ward,* 209 F.3d at 37–38; *EEOC v. Amego, Inc.,* 110 F.3d 135, 149 (1st Cir.1997). Furthermore, because Boston University in this case has articulated a legitimate, non-discriminatory justification for dismissing him from the program, el Kouni was required to establish that this justification was a mere pretext to hide the University's true discriminatory motive by proving specific facts which, when reasonably viewed, would tend logically to undercut the University's position. *See Wynne II,* 976 F.2d at 796. The Court finds that he has failed to do so.