*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0283P (6th Cir.)
File Name: 03a0283p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————

JULIO E. ROMAN,
 *Petitioner-Appellee,*

 *v.*

JOHN ASHCROFT et al.,
 *Respondents-Appellants.*

No. 02-3253

———————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-01236—Ann Aldrich, District Judge.

Argued: June 10, 2003

Decided and Filed: August 13, 2003

Before: MOORE and GIBBONS, Circuit Judges;
SCHWARZER, Senior District Judge.*

———————

### COUNSEL

**ARGUED:** Alison R. Drucker, UNITED STATES
DEPARTMENT OF JUSTICE, IMMIGRATION

———————

* The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

LITIGATION, CIVIL DIVISION, Washington, D.C., for
Appellants. David W. Leopold, DAVID WOLFE LEOPOLD
& ASSOCIATES, Cleveland, Ohio, for Appellee.
**ON BRIEF:** Alison R. Drucker, UNITED STATES
DEPARTMENT OF JUSTICE, IMMIGRATION
LITIGATION, CIVIL DIVISION, Washington, D.C., for
Appellants. David W. Leopold, DAVID WOLFE LEOPOLD
& ASSOCIATES, Cleveland, Ohio, for Appellee.

 MOORE, J., delivered the opinion of the court, in which
SCHWARZER, D. J., joined. GIBBONS, J. (pp. 28-29),
delivered a separate opinion concurring in the result.

———————

### OPINION

———————

 KAREN NELSON MOORE, Circuit Judge. Respondents-
Appellants United States Attorney General, John Ashcroft;
former Acting Commissioner of the Immigration and
Naturalization Service ("INS"), Kevin Rooney; former
Cleveland District Director of the INS, Robert L. Brown; and
New Orleans District Director of the INS, Christine G. Davis
(collectively "the government") appeal the district court's
judgment granting Petitioner-Appellee Julio E. Roman
("Roman") habeas corpus relief. Roman, an Ohio resident,
was convicted of federal crimes in the Northern District of
Ohio and incarcerated in Kentucky. The INS charged Roman
with being removable on three grounds related to his federal
convictions, and Roman was transferred from a federal prison
in Kentucky to an INS detention facility in the Western
District of Louisiana.

 In July 2000, an immigration judge ("IJ") found Roman
removable and statutorily ineligible for discretionary relief
from removal pursuant to § 212(h) of the Immigration and
Nationality Act ("INA"), 8 U.S.C. § 1182(h). The Board of
Immigration Appeals ("BIA") affirmed this decision on

appeal. Roman filed a § 2241 petition for a writ of habeas corpus,[1] arguing that § 212(h) violates the Fifth Amendment Equal Protection Clause. Although Roman was being detained in the Western District of Louisiana at the time, he filed the habeas corpus petition in the district where he resided prior to his incarceration and where he was convicted of the crimes underlying his removal — the Northern District of Ohio. The government moved to dismiss Roman's application because the district court lacked personal jurisdiction over the respondents and because § 212(h) does not violate the Equal Protection Clause. The district court concluded that it had personal jurisdiction over the Attorney General, and granted Roman a writ of habeas corpus on grounds that § 212(h) violates the Equal Protection Clause. The district court then ordered the case remanded to the BIA to allow Roman to pursue § 212(h) relief. The government timely appealed.

Because Roman's action must be brought in the district court having jurisdiction over "the person having custody of the person detained," 28 U.S.C. § 2243, we **VACATE** the district court's decision to grant Roman habeas corpus relief and **REMAND** to the district court with instructions to determine whether the Cleveland District Director and the INS Commissioner are proper respondents to Roman's petition. In the event that the district court concludes that these officials are not proper respondents, we instruct the district court to transfer the action to the Western District of Louisiana.

---

[1] 28 U.S.C. § 2241 and 28 U.S.C. § 2243 both use the terms "application" and "applicant" rather than "petition" and "petitioner." However, many § 2241 cases refer to petitions and petitioners, as do the parties to this action. Therefore, we will refer to Roman's § 2241 application for a writ of habeas corpus as a petition and to Roman as a petitioner throughout this opinion.

## I. FACTS AND PROCEDURE

Roman is a 46-year old native and citizen of the Dominican Republic. He has been a lawful permanent resident of the United States since October 29, 1996, and was last admitted to the United States on February 8, 1997. Roman is married and has six children who are United States citizens.

On September 30, 1999, Roman pleaded guilty in the Northern District of Ohio to fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546(a), and misuse of social security numbers, in violation of 42 U.S.C. § 408(a)(7)(C). Roman was sentenced to 15 months of imprisonment for these two felonies and served 13 months of the sentence.

While Roman was serving his sentence, the INS issued a Notice to Appear and lodged an additional charge against Roman. Pursuant to INA § 237, 8 U.S.C. § 1227, the INS charged Roman with being removable on three grounds: (1) conviction relating to document fraud, *see* INA § 237(a)(3)(B)(iii); (2) conviction of a crime involving moral turpitude committed within five years of entry for which a sentence of one year or longer may be imposed, *see* INA § 237(a)(2)(A)(i); and (3) conviction of an aggravated felony, *see* INA § 237(a)(2)(A)(iii).

Roman was transferred from the Lexington Federal Medical Center in Lexington, Kentucky, to the Oakdale Detention Center in Oakdale, Louisiana, and passed into INS custody. At his removal hearing in Oakdale, Roman admitted to the INS's factual allegations but denied that he was removable. According to Roman, because he adjusted his status in 1991, he was not deportable for committing a crime involving moral turpitude within five years after his admission to the country. Roman also argued that he was not removable because his document fraud was a first offense undertaken solely to assist close family members, which does not constitute an aggravated felony. *See* INA § 101(a)(43)(P), 8 U.S.C.

§ 1101(a)(43)(P). The IJ did not allow Roman to testify about his conviction of document fraud.

On August 11, 2000, the IJ entered a decision rejecting Roman's arguments that he was not deportable for committing a crime involving moral turpitude and that he had not committed an aggravated felony. The decision implied that the five-year period mentioned in the moral turpitude ground of removal started running from the date of Roman's last entry, February 8, 1997. Moreover, because the criminal plea agreement stated that Roman possessed false documents for approximately thirty persons, the IJ rejected Roman's contention that he engaged in document fraud solely to assist close family members.

The IJ found Roman removable, denied Roman's request for cancellation of removal pursuant to INA § 240A(a), 8 U.S.C. § 1229b(a), and ordered Roman removed to the Dominican Republic. The IJ did not address the possibility of discretionary relief from removal pursuant to § 212(h). The BIA affirmed the IJ's decision and denied Roman's motion to reopen to apply for cancellation of removal.

Meanwhile, in May 2001, Roman filed a pro se petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio. He named four respondents — the Attorney General, the INS Commissioner, the former INS District Director in Cleveland, Ohio, and the INS District Director in New Orleans, Louisiana. Roman alleged that his due process rights were violated by the retroactive application of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), that his procedural due process rights were violated because the IJ did not allow him a meaningful opportunity to be heard on the merits of his requests for § 240A or § 212(h) relief, and that his right to equal protection of the laws was violated because these forms of relief "discriminate[] between members of a class based on a distinction that is not rationally related to [their] purpose." Joint Appendix at 17 (Habeas Pet.).

Roman filed a motion seeking a stay of removal, and the district court enjoined the INS from executing a final order of removal pending the outcome of judicial proceedings. The case was briefly held in abeyance while the court awaited the Supreme Court's disposition of *INS v. St. Cyr*, 533 U.S. 289 (2001).

The government moved to dismiss Roman's petition in July 2001. The government challenged personal jurisdiction and venue, noted Roman's failure to exhaust administrative remedies with respect to § 212(h),[2] and argued that § 212(h) does not violate the Equal Protection Clause.

In September 2001, the district court issued an order granting the government's motion to dismiss for want of personal jurisdiction as to the New Orleans District Director and denying the motion as to the Attorney General. *Roman v. Ashcroft*, 162 F. Supp. 2d 755, 758, 759 (N.D. Ohio 2001) [*Roman I*]. The order did not discuss whether the INS Commissioner and Cleveland District Director were appropriately named as respondents. *Id.* at 758. Concluding that it had jurisdiction over the action, the district court directed the government to show cause why Roman's writ should not issue. *Id.* at 765.

In January 2002, the district court granted Roman a writ of habeas corpus, holding that § 212(h) violated the Equal Protection Clause by differentiating between legal permanent residents and other aliens. *Roman v. Ashcroft*, 181 F. Supp. 2d 808, 814 (N.D. Ohio 2002) [*Roman II*]. The district court also found that the IJ's failure to give Roman an opportunity to be heard at his deportation hearing was harmless error. *Id.* at 816. The case was remanded to the BIA to allow Roman to pursue his claim for a discretionary waiver of removal, pursuant to § 212(h). *Id.*

---

[2]The government has waived this argument on appeal.

The government timely appealed the district court's September 2001 and January 2002 orders.

## II.  JURISDICTION OVER ROMAN'S HABEAS CORPUS PETITION

The district court confined its analysis of the government's motion to dismiss for lack of personal jurisdiction to the New Orleans District Director and the Attorney General. Although the government appeals the district court's conclusion that the Attorney General is a properly named respondent to Roman's petition, Roman did not file a cross-appeal of the district court's conclusion that it lacked jurisdiction over the New Orleans District Director. Moreover, because the district court expressly declined to grant or deny the government's motion to dismiss as to the Cleveland District Director and the INS Commissioner, we decline to consider on appeal whether the district court lacks jurisdiction over these two respondents. Therefore, our analysis is confined to the question of whether the district court erred by finding personal jurisdiction over the Attorney General.

We review de novo a district court's determinations as to the existence of personal jurisdiction. *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 542 (6th Cir.), *cert. denied*, 510 U.S. 914 (1993). The district court concluded that it had jurisdiction over Roman's petition because one of the four named respondents to the petition — the Attorney General — was Roman's custodian and because the district court had personal jurisdiction over the Attorney General. Reasoning that, under the circumstances, it was appropriate for Roman to name someone other than his immediate custodian, the district court concluded that the Attorney General should be deemed Roman's custodian. Because the Attorney General was subject to service of process in the Northern District of Ohio, the district court concluded that it had jurisdiction over Roman's petition. The government appeals the district court's September 2001 order, arguing that the Attorney General was not Roman's custodian for habeas corpus

purposes and that the district court therefore lacked personal jurisdiction over the Attorney General. Roman argues that the Attorney General should be deemed his custodian for habeas corpus purposes, and that the alternative decision would effectively deprive Roman of an opportunity to seek habeas corpus review under the circumstances.

Because we do not believe that extraordinary circumstances justify our classification of the Attorney General as Roman's custodian in this case, we conclude that the district court erred by recognizing the Attorney General as an appropriate respondent to Roman's petition.

### A.  The Immediate Custodian Rule

A district court shall direct a writ of habeas corpus "to the person having custody of the person detained."[3] 28 U.S.C. § 2243; *see Braden v. 30th Judicial Circuit Ct. of Ky.*, 410

---

[3] Pursuant to the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), the Department of Homeland Security performs the functions formerly performed by the INS. The Savings Provision of the HSA provides that "[r]eferences relating to an agency that is transferred to the Department in statutes, Executive orders, rules, regulations, directives, or delegations of authority that precede such transfer or the effective date of this Act shall be deemed to refer, as appropriate, to the Department, to its officers, employees, or agents, or to its corresponding organizational units or functions." HSA § 1512(d), 6 U.S.C. 552(d). However, within the context of this civil action, we need not conclude that the parties' arguments about the identity of a detained alien's custodians should be deemed to refer to the corresponding officials under the HSA. The HSA provides,

> [s]ubject to the authority of the Secretary under this Act, pending civil actions shall continue notwithstanding the enactment of this Act or the transfer of an agency to the Department, and in such civil actions, proceedings shall be had, and judgments rendered and enforced in the same manner and with the same effect as if such enactment or transfer had not occurred.

HSA § 1512(c), 6 U.S.C. § 552(c). Thus, we proceed in this civil action as if the HSA were not yet in effect, with the understanding that our analysis will be applicable in future cases by analogy to the corresponding custodians of detained aliens under the HSA.

U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."). Therefore, a court has jurisdiction over a habeas corpus petition only if it has personal jurisdiction over the petitioner's custodian. *Braden*, 410 U.S. at 495. To evaluate jurisdiction, a court therefore must first identify the petitioner's custodian and then determine whether it has personal jurisdiction over that custodian.

"Historically, the question of who is 'the custodian,' and therefore the appropriate respondent in a habeas suit, depends primarily on who has power over the petitioner and . . . on the convenience of the parties and the court." *Henderson v. INS*, 157 F.3d 106, 122 (2d Cir. 1998), *cert. denied*, 526 U.S. 1004 (1999). As a general rule, a petitioner should name as a respondent to his habeas corpus petition "the individual having day-to-day control over the facility in which [the alien] is being detained." *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000), *cert. denied*, 534 U.S. 816 (2001). This is known as the "immediate custodian rule" because it recognizes only the petitioner's "immediate" or "direct" custodian as the "person having custody" over him under § 2243. Courts have deemed these immediate custodians proper respondents to habeas corpus petitions as a "practical" matter "based on common sense administration of justice." *Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945).

Pursuant to the immediate custodian rule, a prisoner filing a habeas corpus petition should generally name as a respondent the warden of the prison where he is confined. *Vasquez*, 233 F.3d at 691. Similarly, a detained alien filing a habeas corpus petition should generally name as a respondent the person exercising daily control over his affairs. Courts have said that a detained alien's immediate custodian is either the warden of the facility where the alien is detained or the INS District Director of the district where the alien is

being detained.[4]  We conclude that although the warden of each detention facility technically has day-to-day control over alien detainees, the INS District Director for the district where a detention facility is located "has power over" alien habeas corpus petitioners. *Henderson*, 157 F.3d at 122.

District Directors head INS district offices, which are considered "the basic operating unit[s] of the [INS]." Charles Gordon, Stanley Mailman, and Stephen Yale-Loehr, 1 *Immigration Law & Procedure* § 3.03[5], at 3-16 (2003). The "district directors have authority and responsibility to grant or deny various applications or petitions submitted to the [INS], to initiate any authorized proceeding in their district, and . . . to issue notices to appear in removal proceedings." *Id.*; *see* 8 C.F.R. § 103.1(g)(2)(ii), *amended by* 68 Fed. Reg. 10922-01 (Mar. 6, 2003). As the heads of the basic operating units of the INS, District Directors oversee the confinement of aliens in all three kinds of INS detention facilities — "Service Processing Centers," "Contract Detention Facilities," and "[s]tate or local government facilities used by INS through Intergovernmental Service Agreements (IGSAs) to hold detainees for more than 72 hours."

---

[4]For courts treating the warden of the facility where an alien is detained as the alien's immediate custodian, *see Yang You Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994) ("It is the warden of the prison or the facility where the detainee is held that is considered the custodian for purposes of a habeas action . . . . because it is the warden that has day-to-day control over the prisoner and who can produce the actual body."); *Aphayavong v. INS*, 169 F.Supp. 2d 1194, 1197 (S.D. Cal. 2001); *Samoeun v. Reno*, No. Civ.A. 00-610 L., 2001 WL 210472, at *2 (D. R.I. Jan. 3, 2001); *Chukwurah v. United States*, 813 F. Supp. 161, 168 (E.D. N.Y. 1993); *Peon v. Thornburgh*, 765 F. Supp. 155, 156 (S.D. N.Y. 1991). For courts treating the INS District Director of the district where the alien is detained as the alien's immediate custodian, *see Henderson v. INS*, 157 F.3d 106, 126 (2d Cir. 1998), *cert. denied*, 526 U.S. 1004 (1999); *Santiago v. INS*, 134 F. Supp. 2d 1102, 1103 (N.D. Cal. 2001); *Williams v. Reno*, No. 00-71241, 2001 WL 85867, at *2 (E.D. Mich. Jan. 11, 2001); *Santos-Gonzalez v. Reno*, 93 F. Supp. 2d 286, 291 (E.D. N.Y. 2000); *Ozoanya v. Reno*, 968 F. Supp. 1, 8 (D. D.C. 1997); *Carvajales-Cepeda v. Meissner*, 966 F. Supp. 207, 208 (S.D. N.Y. 1997).

Detention Operations Manual: Admissions and Release 1 (Sept. 20, 2000), *available at* http://www.immigration/gov/graphics/lawsregs/guidance.htm (last modified Mar. 19, 2003). The wardens of all these facilities act pursuant to INS Detention Standards and are considered agents of the INS District Director in their district. It is clear that the INS does not vest power over detained aliens in the wardens of detention facilities because the INS relies on state and local governments to house federal INS detainees. Whatever daily control state and local governments have over federal INS detainees, they have that control solely pursuant to the direction of the INS. *See Samoeun v. Reno*, No. Civ.A. 00-610 L., 2001 WL 210472, at *2 (D. R.I. Jan. 3, 2001) ("[I]t has been observed that it is the INS District Director who exercises primary control over an INS detainee because the warden acts as an agent for the District Director."). Therefore the INS District Director for New Orleans is Roman's immediate custodian for habeas corpus purposes.

Because the Northern District of Ohio concluded that it did not have personal jurisdiction over the New Orleans District Director, however, we must decide whether persons other than Roman's immediate custodian — such as the Attorney General — also have custody of him for § 2243 purposes. At oral argument, Roman suggested that the immediate custodian rule should not apply in the context of habeas corpus petitions of aliens. *See, e.g.*, *Vasquez*, 233 F.3d at 691 (observing that "the case law concerning the identity of the proper respondent to habeas petitions brought by detained aliens is much more sparse and far less coherent" than the case law about the proper respondent to prisoner habeas corpus petitions); Rachel E. Rosenbloom, *Is the Attorney General the Custodian of an INS Detainee? Personal Jurisdiction and the "Immediate Custodian" Rule in Immigration-Related Habeas Actions*, 27 N.Y.U. Rev. L. & Soc. Change 543, 546 (2001-2002) (maintaining that the immediate custodian rule "has no place in the adjudication of immigration-related habeas actions" and that the Supreme Court has been reluctant to

apply the rule in the context of habeas corpus petitions filed by detained aliens). One court reviewing an alien's habeas corpus petition concluded that it had personal jurisdiction over four named respondents — two INS District Directors, the Commissioner of the INS, and the Attorney General — because they were all custodians of the petitioner and able to be reached by service of process.[5] *Mojica v. Reno*, 970 F. Supp. 130, 166 (E.D. N.Y. 1997), *aff'd in part,* 157 F.3d 106 (1998).

We see no reason to apply a different rule for identifying a petitioner's custodian depending on whether the petitioner is an alien or a prisoner. Section 2243 states that a writ of habeas corpus "shall be directed to *the* person having custody of the person detained," which suggests that only one individual can properly be named as the respondent to a habeas corpus petition. 28 U.S.C. § 2243 (emphasis added); *see Vasquez*, 233 F.3d at 693 (suggesting that a petitioner must name one custodian, and may not "choose from among an array of colorable custodians"). Although Congress may not have "intended the article, 'the,' to have . . . dispositive significance," *see Chavez-Rivas v. Olsen*, 194 F. Supp. 2d 368, 374 (D. N.J. 2002) ("'[T]he' could mean 'a' or 'any' as easily as it could mean 'that.'"), we agree with the First

---

[5] "In cases where the . . . petitioner has filed in the district of confinement . . . the government has raised no objection to the Attorney General, the INS, or the INS Commissioner being named." Rachel E. Rosenbloom, *Is the Attorney General the Custodian of an INS Detainee? Personal Jurisdiction and the "Immediate Custodian" Rule in Immigration-Related Habeas Actions*, 27 N.Y.U. Rev. L. & Soc. Change 543, 577 (2001-2002). In *Mojica v. Reno*, 970 F. Supp. 130 (E.D. N.Y. 1997), *aff'd in part,* 157 F.3d 106 (1998), the Eastern District of New York reasoned that four respondents should be deemed custodians under § 2243 because "[t]he habeas statute does not specify who the person having custody will be, nor does it state that there may only be one custodian. Nowhere does the statute speak of an immediate custodian." *Id.* at 166 (quotations omitted). We note that this logic would counsel against an immediate custodian rule in the context of prisoner habeas corpus petitions as well.

Circuit that "[t]he immediate custodian rule effectuates section 2243's plain meaning and gives a natural, commonsense construction to the statute." *Vasquez*, 233 F.3d at 693.

Moreover, as a practical matter, "the [immediate custodian] rule is clear and easily administered." *Id.* The adjudication of habeas corpus petitions filed by detained aliens would become considerably more difficult to administer if we were to adopt a broader definition of "custodian" in this context. In other words, interpreting the word "custodian" in § 2243 to refer to not only an alien's immediate custodian, but also other officials with control over the alien's detention and release — such as the Commissioner of the INS or the Attorney General — would establish a regime in which several courts would have personal jurisdiction over an alien's "custodians." Aliens could then engage in forum shopping, choosing among several different districts as long as personal jurisdiction existed over at least one of the various custodians and venue requirements were satisfied. Although venue considerations would ensure that a petitioner could not file in every jurisdiction, courts would nevertheless be forced "in many cases to undertake fact-intensive analyses of venue and forum non conveniens issues." *Vasquez*, 233 F.3d at 694. Thus, in this respect, adopting a broader definition of "custodian" would complicate and extend the duration of habeas corpus proceedings.

Roman points out that even if a broader definition of "custodian" might delay courts in their evaluation of a single habeas corpus petition, it would not slow the adjudication of habeas corpus petitions any more than it is already slowed by the backlog of such petitions in jurisdictions housing INS detention facilities. In essence, Roman suggests that the regime he proposes would not cause any problems greater than those under the existing regime. However, we see no reason to solve one problem by creating another. This is particularly true because Congress is in a better position to solve the problem of overloaded dockets. When prisoner

habeas corpus petitions caused dockets to become backlogged in the 1940s, Congress gave federal prisoners the ability to attack collaterally their convictions in the court where they were sentenced rather than in the jurisdiction of their confinement. 28 U.S.C. § 2255; *see Vasquez*, 233 F.3d at 694. Requiring alien habeas corpus petitioners to name their immediate custodians as respondents may contribute to the problem of overcrowded dockets in particular districts. However, given that our recognition of a broader definition of "custodian" might delay the adjudication of alien habeas petitions in other ways, we feel confident that we should not attempt to construct a judicial solution to this problem.

For all the reasons discussed above, we conclude that a detained alien generally must designate his immediate custodian — the INS District Director for the district where he is being detained — as the respondent to his habeas corpus petition.

## B. Beyond the Immediate Custodian Rule

Although we conclude that the immediate custodian rule generally applies to alien habeas corpus petitioners, we note the possibility of exceptions to this rule. "[T]he rules treating the immediate custodian as the only proper respondent . . . have not been applied consistently or in a rigid fashion." *Henderson*, 157 F.3d at 124. In fact, most courts adopting the immediate custodian rule for alien habeas corpus petitioners have explicitly noted the possibility of exceptions even as they adopt the rule. *See, e.g., Vasquez*, 233 F.3d at 696 ("[W]e can envision that there may be extraordinary circumstances in which the Attorney General appropriately might be named as the respondent to an alien habeas petition."); *Chavez-Rivas*, 194 F. Supp. 2d at 375; *Nwankwo v. Reno*, 828 F. Supp. 171, 174 (E.D. N.Y. 1993) ("While the general rule may be sound as a matter of policy, the language of the habeas corpus statute does not compel rigid adherence to it in every case."). Arguably, as a jurisdictional matter, "it is, or should be, enough that the respondent named has the

power or ability to produce the body when so directed by the court pursuant to process lawfully issued and served upon him." *Ahrens v. Clark*, 335 U.S. 188, 199 (1948) (Rutledge, J., dissenting). In this case, Roman urges this court to make an exception to the immediate custodian rule by concluding that the Attorney General can be considered Roman's custodian and thus a proper respondent to Roman's petition.

The district court below declined to apply the immediate custodian rule, instead concluding that the Attorney General was an appropriate respondent to Roman's habeas corpus petition. On appeal, the government maintains that the district court erred by departing from the immediate custodian rule and basing personal jurisdiction on the Attorney General. Roman counters that the district court properly made an exception to the immediate custodian rule because the exception was necessary to preserve Roman's right to seek habeas corpus relief. Specifically, Roman asks this court "to allow jurisdiction over an indirect custodian in circumstances where a detainee would otherwise be deprived of his right to habeas review." Roman Br. at 15. We must consider, first, whether the Attorney General may ever be properly named as an alien's custodian and, second, whether the circumstances of this case require our recognition of the Attorney General as a proper respondent to Roman's habeas corpus petition.

### 1. The Attorney General as Custodian

A corollary of the immediate custodian rule is that generally the Attorney General is considered neither the custodian of a detained alien for purposes of § 2243 nor a proper respondent to an alien's habeas corpus petition.[6] *See*

---

[6]Although few circuits have specifically rejected the possibility that the Attorney General may be a custodian in the context of alien habeas corpus petitions, several circuits have said that the Attorney General is not a prisoner's custodian under § 2243. *See, e.g., Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945); *Blango v. Thornburgh*, 942 F.2d 1487, 1491-92 (10th Cir. 1991); *Guerra v. Meese*, 786 F.2d 414, 416 (D.C. Cir.

*Vasquez*, 233 F.3d at 696; *Carvajales-Cepeda v. Meissner*, 966 F. Supp. 207, 209 (S.D. N.Y. 1997) ("It is well settled . . . that the Attorney General is not the custodian of I.N.S. detainees."). In the context of prisoners, courts have rejected the notion of the Attorney General as respondent because although he has supervisory and regulatory custody of all federal prisoners, "it is apparent that . . . he does not have actual physical custody of a prisoner who is confined in a federal prison or other federal institution." *Jones v. Biddle*, 131 F.2d 853, 854 (8th Cir. 1942), *cert. denied*, 318 U.S. 784 (1943). As with prisoners, the Attorney General does not have actual physical custody of aliens detained by the INS.

Although we agree with those courts that have concluded that the Attorney General is not generally a proper respondent to any habeas corpus petition, nonetheless we recognize that the Attorney General's relationship to prisoners differs significantly from his relationship to detained aliens. The Attorney General's role as the ultimate overseer of federal prisoners, *see* 18 U.S.C. § 4001(b)(2), is not equivalent to his designation as the legal custodian of aliens because he plays a much larger role in the immigration context, *see Chavez-Rivas*, 194 F. Supp. 2d at 374 ("Congress has consistently designated the Attorney General as the legal custodian of immigration habeas petitioners.").

The Second Circuit has described the Attorney General's unique role in the immigration context as follows:

> There is . . . no question that the Attorney General has the power to produce the petitioners, remains the ultimate decisionmaker as to matters concerning the INS, *see* 8

---

1986); *Jones v. Biddle*, 131 F.2d 853, 854 (8th Cir. 1942), *cert. denied*, 318 U.S. 784 (1943). According to the First Circuit, "[t]hese courts reason that while the Attorney General is the ultimate overseer of all federal prisoners, *see* 18 U.S.C. § 4001[(b)](2), she is not responsible for day-to-day prison operations and does not hold prisoners in actual physical custody." *Vasquez*, 233 F.3d at 691.

U.S.C. § 1103(a)(1),[7] and is commonly designated a respondent in these cases, even when personal jurisdiction over the immediate custodian clearly lies. In this respect, the extraordinary and pervasive role that the Attorney General plays in immigration matters is virtually unique. Thus, the Attorney General continues to be in complete charge of the proceedings leading up to the order directing the[] removal [of aliens] from the country and has complete discretion to decide whether or not removal shall be directed.

*Henderson,* 157 F.3d at 126 (quotations and footnote omitted). Congress gives the Attorney General authority to "take into custody any alien" whose criminal convictions render him deportable or inadmissible, INA § 236(e)(1), 8 U.S.C. § 1226(c)(1),[8] and has designated him as the proper respondent in most actions reviewing the legality of removal orders, INA § 242(b)(3)(A), 8 U.S.C. § 1252(b)(3)(A). Arguably, "in immigration cases, the warden or district director who has 'day-to-day control' [over a petitioner] is merely an agent of the Attorney General, who has the statutorily authorized power over aliens' custody and release." *See Arias-Agramonte v. Comm'r of INS*, No. 00 Civ. 2412(RWS), 2000 WL 1617999, at *7 (S.D. N.Y. Oct. 30, 2000); *see Nwankwo*, 828 F. Supp. at 174 (explaining

---

[7]Section 1103(a)(1) has been amended by the HSA, 116 Stat. 2135 (2002).

[8]The government contends that the reference to the "Attorney General" in the mandatory detention statute is a mere placeholder for all immigration officers because more than one entity is empowered to take an alien into custody. *See* 8 C.F.R. § 287.7(d) (2001), *amended by* 68 Fed. Reg. 35273-01 (June 13, 2003). As Roman notes, however, other provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 delegate specific responsibilities to other immigration officials without naming the Attorney General as a proxy. *See Arias-Agramonte v. Comm'r of INS*, No. 00 Civ. 2412(RWS), 2000 WL 1617999, at *6 (S.D. N.Y. Oct. 30, 2000).

that the Attorney General may be "an appropriate respondent in a habeas corpus proceeding because she has the power to direct her subordinates to carry out any order directed to her to produce or release the petitioner").[9]

In light of the degree of control which the Attorney General has over an alien's immediate custodian, we believe that it may be appropriate to recognize the Attorney General as a proper respondent to an alien's habeas corpus petition under certain circumstances. The nature and scope of those circumstances remains to be determined.

**2. Extraordinary Circumstances**

Roman concedes that the district court's finding of personal jurisdiction over the Attorney General was somewhat unusual, but argues that under the circumstances it was justified by the importance of preserving Roman's right to seek habeas corpus relief. The district court reasoned that because Roman was incarcerated in a facility in the Western District of Louisiana with a known backlog of habeas corpus petitions, *Emejulu v. INS*, 989 F.2d 771, 772 (5th Cir. 1993), there was a risk that "Roman might be removed from the United States before his petition could be heard on the merits." *Roman I*, 162 F. Supp. 2d at 763. The district court found "prima facie reason to believe that removal of Roman to the Dominican Republic prior to adjudication of the merits of his petition would, for practical purposes, deny him the benefit of the writ," and concluded that the Attorney General was a proper respondent to Roman's petition. *Id*. In other words, the district court concluded that Roman would be

---

[9]The Eastern District of New York has rejected the immediate custodian rule and regularly recognizes the Attorney General as a proper respondent to an alien's habeas corpus petition. *See, e.g., Pena-Rosario v. Reno*, 83 F. Supp. 2d 349, 362 (E.D. N.Y. 2000); *Pottinger v. Reno*, 51 F. Supp. 2d 349, 357 (E.D. N.Y. 1999), *aff'd on other grounds*, 2000 WL 1864477 (2d Cir. Dec. 18, 2000) (unpublished opinion).

deprived of habeas corpus relief if he were not permitted to name the Attorney General as a respondent.

Under certain extraordinary circumstances it may be necessary to depart from the immediate custodian rule in order to preserve a petitioner's access to habeas corpus relief. In spite of "[t]he general rule . . . that a circuit judge has jurisdiction to grant a writ of habeas corpus only if the petitioner's immediate custodian is located within the circuit," *Demjanjuk v. Meese*, 784 F.2d 1114, 1115 (D.C. Cir. 1986) (Bork, J.), we believe that "it is appropriate, in . . . very limited and special circumstances, to treat the Attorney General of the United States as the custodian," *id.* at 1116. Such circumstances may arise where a detainee does not have a realistic opportunity for judicial review of his executive detention. The Constitution safeguards the right to petition for a writ of habeas corpus, U.S. Const. art. I § 9, cl. 2, and this right should not be lightly abrogated, *see, e.g., Felker v. Turpin*, 518 U.S. 651, 661-62 (1996) (suggesting that courts will enforce only very clear statutory language repealing habeas corpus jurisdiction). Therefore, under extraordinary circumstances where it is necessary to preserve a person's access to habeas corpus relief, we may recognize the Attorney General as a respondent to an alien's habeas corpus petition.

One example of extraordinary circumstances is *Demjanjuk v. Meese*. In *Demjanjuk*, a petitioner's counsel named the Attorney General as the respondent to the habeas corpus petition because the government was holding the petitioner in custody at an undisclosed location while he awaited extradition to Israel. *Demjanjuk*, 784 F.2d at 1116. Because the petitioner's attorneys were unaware of Demjanjuk's location, they would have had "to file in every jurisdiction" if the court rigidly enforced the immediate custodian rule. *Id.* Judge Bork reasoned that the Attorney General was a proper respondent under the circumstances because an exception was necessary to ensure "that petitioner not be denied the right to petition for a writ of habeas corpus." *Id.* However, not wanting to extend the exception any further than was

necessary to preserve Demjanjuk's right to petition for habeas corpus relief, the court specified that jurisdiction would terminate if Demjanjuk's presence in another jurisdiction became known.

Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez-Rivas*, 194 F. Supp. 2d at 374. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft*, 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); Rosenbloom, *supra*, at 549. In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias-Agramonte*, 2000 WL 1617999, at *8 (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

Although we do not believe that the mere possibility of successive transfers would justify an exception to the immediate custodian rule, we do believe that an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions. In this case, however, Roman has not alleged facts suggesting either that the government improperly manipulated its authority in an attempt to deny Roman a meaningful opportunity for relief or that Roman faced difficulties akin to Demjanjuk's inability to identify his immediate custodian. Therefore, this court need not decide the appropriate scope of

the extraordinary circumstances exception to the immediate custodian rule as a general matter. Rather, the facts of this case require this court to determine only whether the alleged crowding of a docket in the district of an alien's confinement justifies permitting the alien to name the Attorney General as a respondent to his habeas corpus petition filed in the district where he formerly resided and was convicted.

The District Court below concluded that the circumstances justified recognizing the Attorney General as a respondent to Roman's petition because Roman would effectively be denied an opportunity to seek habeas corpus relief if he named his immediate custodian and filed his petition in the district where he was being detained. Roman's entire argument hinges on the claim that he should not be required to name his immediate custodian at the Oakdale facility as the respondent because only the Western District of Louisiana would have jurisdiction over Roman's petition seeking a writ against his immediate custodian. According to Roman, because he would have to file his petition in the Western District of Louisiana, he would effectively be denied an opportunity to seek habeas relief because "the torrent of petitions flowing from the Oakdale facility" into that district would all but ensure that the district court would never consider Roman's petition prior to his deportation. *See Emejulu,* 989 F.2d at 772. Although at least one court has equated filing a habeas petition in the Western District of Louisiana to being denied "any meaningful habeas corpus relief," *Nwankwo,* 828 F. Supp. at 174, we do not believe that a crowded docket can — without more — constitute extraordinary circumstances justifying a departure from the immediate custodian rule. *Cf. Alcaide-Zelaya v. McElroy,* Nos. 99Civ.5102(DC), 99Civ.9999(DC), 2000 WL 1616981, at *4 (S.D. N.Y. Oct. 27, 2000) (expressing "concern that the government can 'seriously undermine the remedy of habeas corpus' by detaining so large a number of aliens in one facility that the local district court is overwhelmed by a flood of habeas petitions").

The circumstances of Roman's petition are not such that our refusal to recognize the Attorney General as a respondent will effectively deny Roman even the possibility of habeas corpus relief. As an initial matter, there is no reason that Roman could not have filed his habeas corpus petition in the Western District of Louisiana; in fact, he can still do so in light of our conclusion that we lack jurisdiction to consider his petition. Furthermore, Roman cites only the Fifth Circuit's suggestion in a 1993 opinion that the Western District of Louisiana has a very overloaded docket as evidence of the backlog. *See Emejulu,* 989 F.2d at 772. Roman cites no recent evidence of a vast discrepancy between the habeas corpus filings per judge in that court and any other district court, and we have been unable to find any clear evidence of such a discrepancy.

Regardless of whether either Roman or the government can provide convincing statistics about the caseload of the Western District of Louisiana, we do not believe that the possibility of an alien's removal prior to the adjudication of his habeas corpus petition amounts to an effective denial of the petitioner's opportunity to seek meaningful habeas corpus relief. Several circuits have concluded that a petitioner meets the jurisdictional custody requirement of § 2241 even after he has been removed "so long as he was in custody when the habeas petition was filed" and that a case or controversy continues to exist as long as the petitioner "continues to suffer actual collateral consequences of his removal." *Zegarra-Gomez v. INS,* 314 F.3d 1124, 1127 (9th Cir. 2003); *see Leitao v. Reno,* 311 F.3d 453, 456 (1st Cir. 2002) (noting that "the bar on readmission of a removed alien is a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner"); *Smith v. Ashcroft,* 295 F.3d 425, 428 (4th Cir. 2002); *Lee Moi Chong v. INS,* 264 F.3d 378, 382-83 (3d Cir. 2001). Because the INA provides that an alien ordered removed "who again seeks admission within 5 years of the date of such removal . . . is inadmissible," 8 U.S.C. § 1182(a)(9)(A)(ii), an order of removal creates sufficient collateral consequences to render

a removed alien's petition a live case or controversy, *see Lee Moi Chong*, 264 F.3d at 385. Roman will not be deprived of his opportunity to seek habeas corpus relief even if he is removed prior to a court's resolution of his petition.

Therefore, the circumstances of Roman's habeas corpus petition are not such that a departure from the immediate custodian rule is justified at this time, and the Attorney General is not a proper respondent to Roman's petition. The Northern District of Ohio erred by relying on its finding of personal jurisdiction over the Attorney General as a basis for jurisdiction here.

We decline to finally determine whether the district court had jurisdiction over Roman's habeas corpus petition on other grounds because the district court below did not decide whether either the Cleveland District Director or the INS Commissioner was a properly named respondent and because neither party briefed the matter before this court. We direct the district court on remand to determine, consistent with the views expressed in our opinion, whether either of these officials is properly a respondent in this action.

## III. TRANSFERRING ROMAN'S PETITION

Assuming that the district court for the Northern District of Ohio decides on remand that none of the named respondents were properly before it, we now consider whether the district court erred by dismissing the New Orleans District Director from the action rather than transferring the entire action pursuant to 28 U.S.C. § 1631. Section 1631 provides that if a civil action or appeal is filed in a court lacking jurisdiction, "the court *shall*, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631 (emphasis added). Upon such transfer, "the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the

court from which it is transferred." *Id.* A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) "transfer would not be in the interest of justice." *See* Jeffrey W. Tayon, *The Federal Transfer Statute: 28 U.S.C. § 1631*, 29 S. Tex. L. Rev. 189, 214 (1987).

We note that circuits have split on the question of whether § 1631 provides for transfers only in the event that a federal court lacks subject matter jurisdiction or also in the event that the court lacks personal jurisdiction. *See, e.g., SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir.) (noting that "the legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure lack of subject matter jurisdiction"), *cert. denied*, 531 U.S. 824 (2000); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 284 (3d Cir. 1994) (explaining that a court lacking personal jurisdiction may consider transferring the action pursuant to § 1631); *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1526-27 (10th Cir. 1987) (same). Through § 1631, Congress "gave broad authority to permit the transfer of an action between any two federal courts," *Ross*, 822 F.2d at 1526, and courts have effectuated Congress's intent by broadly construing the statute, *id.* at 1527. The language of § 1631 does not refer to any specific type of jurisdiction, only referring broadly to "jurisdiction." *See* Tayon, *supra,* at 224 ("The literal language of the statute . . . is broad enough to encompass either [lack of subject matter or personal jurisdiction]."). Moreover, a broad construction of the statute is consistent with Congress's intent to "protect a plaintiff against either additional expense or the expiration of a relevant statute of limitations in the event that the plaintiff makes an error in trying to select the proper court within the complex federal court system." 17 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4104, at 406 (2d ed. 1986) (citing S. Rep. No. 97-275 (1982)). In light of the language of § 1631 and its purpose, we therefore conclude that the

statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction.

In light of our conclusion that the Attorney General was not a proper respondent and in light of the district court's conclusion that it lacked personal jurisdiction over the New Orleans District Director, we believe that § 1631 would apply in this case. It would have been appropriate for Roman to file his habeas petition in the Western District of Louisiana because it is the jurisdiction of Roman's confinement. *See Martin v. Perez*, 319 F.3d 799, 802 (6th Cir. 2003) (stating that a § 2241 petition "must be filed in the district court that has jurisdiction over a prisoner's place of confinement"). Roman named his immediate custodian, the New Orleans District Director, as a respondent to the habeas corpus petition that he filed in the Northern District of Ohio. Although the district court found that the Northern District of Ohio does not have personal jurisdiction over the New Orleans District Director, the Western District of Louisiana would have the requisite personal jurisdiction. "A federal court has general jurisdiction when the defendant's contacts with the forum state are 'substantial' and 'continuous and systematic,' so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state." *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003). The New Orleans District Director works in the Western District of Louisiana and is subject to the personal jurisdiction of that court.[10]

Because the Western District of Louisiana would have jurisdiction over the New Orleans District Director, the Northern District of Ohio district court cannot decline to

---

[10]The New Orleans District Director oversees immigration-related services for the state of Louisiana and for Southern Mississippi. *See* http://www.immigration.gov/graphics/fieldoffices/neworleans/index.htm (last modified Feb. 28, 2003).

transfer the case under § 1631 on grounds that no federal court would have jurisdiction. Therefore, the appropriateness of a § 1631 transfer turns on whether such a transfer would be in the interest of justice. We believe that it would be in the interest of justice to transfer the action because a dismissal of the action would only cause Roman to incur the additional expense of filing the same habeas corpus petition in the Western District of Louisiana. *See* 17 Wright, Miller, & Cooper, *supra*, § 4104, at 406 (noting that § 1631 is intended in part to protect petitioners from incurring additional expense if they erroneously file in the wrong court).

For these reasons, we conclude that, if the district court on remand finds that the Cleveland District Director and the INS Commissioner are not proper respondents, the district court erred by dismissing the New Orleans District Director from the action. The district court should now transfer the action to the Western District of Louisiana pursuant to § 1631.[11]

### IV. CONCLUSION

For the reasons explained above, we **VACATE** the district court's judgment granting habeas corpus relief to Roman because the Attorney General was not properly named as the respondent in Roman's petition for a writ of habeas corpus. We **REMAND** the case to the district court with instructions to decide whether the Cleveland District Director or the INS Commissioner is a proper respondent consistent with this opinion. In the event that the district court finds that these

---

[11]Even if § 1631 did not permit transfers for lack of personal jurisdiction, the action should be transferred pursuant to 28 U.S.C. § 1406(a). Section 1406(a) states that where venue is improper, the district court where the action was filed "shall . . . if it be in the interest of justice, transfer such case to any district or division in which [the action] could have been brought," *id.*, regardless of whether the transferring court lacks personal jurisdiction over the defendant, *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962); *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980).

officials are not proper respondents, we instruct the district court to transfer the petition to the Western District of Louisiana pursuant to 28 U.S.C. § 1631.

---

## CONCURRENCE

---

JULIA SMITH GIBBONS, Circuit Judge, concurring. I concur in the result in this case and agree with much of the majority opinion's reasoning. I write separately to note two points.

First, whether the petitioner is a detained alien or a federal prisoner, the weight of authority supports a determination that the Attorney General is not a proper respondent in petitions under 28 U.S.C. § 2241. *Vasquez v. Reno*, 233 F.3d 688, 691 (1st Cir. 2000) (finding that normally the Attorney General is not the proper respondent in alien habeas cases and noting that a number of courts have held that the Attorney General is not a proper custodian for purposes of a prisoner's habeas petition); *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir.1994) (summarily dismissing the idea that the Attorney General might be a proper respondent in an alien habeas case); *Blango v. Thornburgh*, 942 F.2d 1487, 1491-92 (10th Cir. 1991) (per curiam) (affirming district court's dismissal of Attorney General because the prison warden, not the Attorney General, was the proper respondent for the prisoner's habeas action); *Sanders v. Bennett*, 148 F.2d 19, 20 (D.C. Cir. 1945) (holding that warden, not Attorney General, was proper respondent in prisoner's habeas petition); *Jones v. Biddle*, 131 F.2d 853, 854 (8th Cir. 1942) (same); *Santiago v. INS*, 134 F.Supp.2d 1102, 1104 (N.D. Cal. 2001) (finding that Attorney General was not a proper respondent in a habeas action brought by an alien); *Pearce v. Ashcroft*, No. 301CV1160CFD, 2003 WL 1145468, at *1 (D. Conn. Mar. 12, 2003) (concluding that the Attorney General is not a proper respondent to an alien's habeas action filed pursuant to § 2241); *Carvajales-Cepeda v. Meissner*, 966 F. Supp. 207, 208 (S.D.N.Y. 1997) ("It is well settled . . . that the Attorney General is not the custodian of INS detainees"); *Wang v. Reno*, 862 F. Supp. 801, 812-13 (E.D.N.Y. 1994) (finding that Attorney General was not

alien's custodian for habeas purposes); *Peon v. Thornburgh*, 765 F. Supp. 155, 156 (S.D.N.Y. 1991) (rejecting argument that Attorney General was alien's custodian for purpose of alien's habeas petition). The majority states that the "Attorney General's relationship to prisoners differs significantly from his relationship to detained aliens" and suggests that the Attorney General has a unique role in immigration matters that makes him more likely to be a proper respondent in a petition brought by a detained alien than a federal prisoner. I am not prepared to reach this conclusion, which seems unnecessary to the result. As the First Circuit stated in *Vasquez*:

> The Attorney General's role with regard to aliens is not materially different from her role with regard to prisoners at least not different enough to justify a rule that she is the custodian of aliens, but not prisoners, for habeas purposes. After all, the Attorney General is the designated custodian of prisoners to much the same extent as she is the designated custodian of aliens. *Compare* 18 U.S.C. § 4001(2) *with* 8 U.S.C. § 1226(c)(1). And just as she has the ultimate authority to produce the body of an alien, she has the ultimate authority to produce the body of a prisoner.

233 F.3d at 696.

Second, in its discussion of extraordinary circumstances which may justify departure from the immediate custodian rule, the majority addresses hypothetical situations that are not present here. I would limit our holding on this point to the conclusion that a crowded docket alone cannot constitute extraordinary circumstances, noting of course that as a factual matter, Roman points to no evidence from which one could find the existence of a crowded docket in the Western District of Louisiana.